UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Injah Tafari  #89A4807,

                  Plaintiff,                       **Hon. Hugh B. Scott**

                                                    06CV0603A

                     v.                           **Decision &**
                                                        **Order**

Lynn Paul, et al.

                  Defendants.

---

Before the Court is the defendants' motion for summary judgment. (Docket No. 42).

**Background**

The plaintiff, Injah Tafari ("Tafari"), commenced this action pursuant to 42 U.S.C. §1983 alleging that his rights were violated by defendants Lynn Paul, Mark Drews and Paul Manno, each of whom are corrections officers at the Wende Correctional Facility ("WCF"). More specifically, Tafari alleges that:(1) he was verbally harassed and abused by the defendants upon his arrival at Wende on May 26, 2003 (Docket No. 1 at ¶ 6); (2) that he was assaulted by the defendants on September 16, 2003 (Docket No. 1 at ¶¶ 7, 16-21); (3) that he was sexually molested by defendant Drews on July 23, 2003 (Docket No. 1 at ¶¶ 9-11); and (4) that defendant Drews used excessive force on July 23, 2003 (Docket No. 1 at ¶¶ 14-15).

1

**Summary Judgment**

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d. 351 (2nd Cir. 2003); Fed.R.Civ.P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, 316 F.3d. at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.1997) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248, (1986)). While the moving party must demonstrate the absence of any genuine factual dispute, (Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts... . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87(1986); McCarthy v. American Intern. Group, Inc., 283 F.3d 121 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir.2002).

**Verbal Abuse**

To the extent the plaintiff attempts to assert a claim under §1983 for verbal harassment or abuse, the claim must be dismissed. Such allegations, without a showing of an actual injury, are

insufficient to support a §1983 claim. Lewis v. Casey, 518 U.S. 343, 349-50 (1996); Johnson v. Eggersdorf, 8 Fed. Appx. 140, 143 (2d Cir.2001) (citing Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1986)("allegations of verbal harassment are insufficient to base a § 1983 claim if no specific injury is alleged.") Hendricks v. Boltja, 20 Fed. Appx. 34, 36 (2d Cir.2001) (holding that "verbal harassment was not actionable" in case where officer, inter alia, told inmate to "get [his] black ass out of the library" and threatened to "smash [his] head open"); La Grande v. Town Of Bethlehem Police Dept., 2009 WL 2868231 (N.D.N.Y. 2009)(plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983); Gill v. Hoadley, 261 F.Supp.2d 113, 129 (N.D.N.Y.2003) (collecting cases)("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."); Shabazz v. Pico, 994 F.Supp. 460, 474 (S.D.N.Y.1998) ("verbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under ... § 1983 "); Jermosen v. Coughlin, 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983 ."); Beckles v. Bennett, 2008 WL 821827 (S.D.N.Y. 2008)(alleged threatening remarks that Plaintiff was "getting no rec, only [defendant's] foot up [plaintiff's] behind" was insufficient to state §1983 claim).

    This claim is dismissed.

**Sexual Assault**

The plaintiff claims that he was sexually assaulted on July 23, 2003. According to the plaintiff, on that date defendants Paul and Drews[1] came to his cell[2] to bring him out to recreation. In connection with a pat frisk prior to being taken to recreation, Tafari alleges that he was handcuffed behind his back and that defendant Drews began "sexually molesting plaintiff by rubbing his hands between plaintiffs buttock and gently rubbing and squeezing plaintiff's penis and groin area." (Docket No. 1 at ¶ 10). Tafari alleges that he asked defendant Paul to tell Drews to stop, but she allegedly responded by saying: "shut the fuck up nigger and face the wall." (Docket No. 1 at ¶¶ 11-12).[3]

The plaintiff admits that the pat frisk by Drews took "seconds, brief seconds." (Docket No. 44, Tafari Deposition at page 20). Drews denies the plaintiff's allegations. The defendants contend that notwithstanding such factual dispute, summary judgment would still be required as a matter of law even if the plaintiff's allegations were believed to be true. "Sexual abuse may violate contemporary standards of decency and can cause severe physical and psychological

---

[1] Tafari has testified that Manno was not involved in this incident. (Docket No. 44, Exhibit A, Deposition of Injah Tafari dated March 23, 2009 (hereafter referred to as the "Tafari Deposition") at page 29).

[2] At the time of this incident, Tafari was housed in cell "SHU-4" in Wende's special housing unit (S.H.U.) due to a prior disciplinary action. He stated that the prior disciplinary action stemmed from a 1998 incident while the plaintiff was housed at the Green Haven Correctional Facility. Tafari was apparently convicted of "cutting an inmate" and given 120 months in S.H.U. (Docket No. 44, Tafari Deposition" at pages 12-13).

[3] The plaintiff's deposition testimony contradicts this allegation. At his deposition, Tafari stated that when he asked Paul: "What's happening around here?"; Paul responded "Comply with the pat frisk." (Docket No. 44, Tafari Deposition at page 19). Tafari was asked if Paul said anything other than "comply with the pat frisk"; to which Tafari answered: "No, sir." (Docket No. 44, Tafari Deposition at page 19).

harm. For this reason, there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." Boddie v. Schnieder, 105 F.3d 857, 861 (2d. Cir. 1997). However, in Boddie, the Second Circuit made it clear that not every allegation of sexual harassment is sufficient to articulate a claim of constitutional dimension. Indeed, in Boddie, the Second Circuit dismissed as inadequate a prisoner's claim that a female corrections officer made a possible pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis. Boddie, 105 F.3d 857, 859-861("The isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court."). See also Morales v. Mackalm, 278 F.3d 126 (2d. Cir. 2002)("Because Morales' allegations do not even rise to the level of those made by the plaintiff in Boddie, they do not state a claim for sexual harassment in violation of the Eighth Amendment to the United States Constitution."); Wylie v. Bedford Hills Correctional Facility of New York, 2008 WL 2009287 *2 (S.D.N.Y. 2008)(While there can be no doubt that severe or repetitive sexual abuse of an inmate by a prison officer can constitute an Eighth Amendment violation, where the alleged conduct is limited to isolated episodes of harassment, and no single incident is severe, a plaintiff does not state a claim under the Eighth Amendment.); Williams v. Fitch, 2008 WL 1947024 *2 (W.D.N.Y. 2008)(An Eighth Amendment claim under § 1983 will not lie, however, where an inmate alleges only minor, isolated incidents which are neither singly nor "cumulatively egregious in the harm they inflicted."); Davis v. Castleberry, 364 F.Supp.2d 319, 321 (W.D.N.Y.2005) (allegation that corrections officer grabbed inmate's

5

penis during pat frisk is insufficient to state constitutional claim); Morrison v. Cortright, 397 F.Supp.2d 424, 425 (W.D.N.Y.2005) (allegations that a corrections officer touched plaintiff's buttocks, and that another "rubbed up against plaintiff['s] buttocks with [the officer's] private part" during a strip search describe an isolated incident unaccompanied by physical injury, and therefore are not sufficiently serious to establish a constitutional claim); Montero v. Crusie, 153 F.Supp.2d 368, 373, 375 (S.D.N.Y.2001) (allegation that corrections officer squeezed inmate's genitalia during pat-frisks on several occasions does not show sufficiently serious deprivation to establish Eighth Amendment violation, particularly when inmate did not allege that he was physically injured by such conduct); Nelson v. Michalko, 35 F.Supp.2d 289, 293 (W.D.N.Y.1999) (allegation that inmate's anal area was touched by a metal detector during a search does not describe sufficiently serious conduct to raise an Eighth Amendment claim); Williams v. Kane, 1997 WL 527677 at *11 (S.D.N.Y.1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during pat frisk fails to state constitutional claim).

The alleged conduct by Drews, if plaintiff's allegations[4] were accepted as true, is no more egregious than the conduct found to be insufficient to rise to the level of a constitutional violation in Boddie and its progeny. Based on the above, the plaintiff's claim of sexual harassment are dismissed.

---

[4] Other than the plaintiff's testimony, Tafari's allegations regarding the alleged conduct by Drews are unsubstantiated in the record.

**Assault on September 16, 2003**

The plaintiff alleges that he was assaulted by the defendants on September 16, 2003. According to the plaintiff, he was being escorted by defendants Paul, Drews and Manno to his cell after a visit to the facility hospital. Tafari asserts that without provocation, defendant Drews "rammed plaintiff's head into the corner of the bars and wall" (Docket No. 1 at ¶ 16). The plaintiff contends that defendant Drews then pulled the plaintiff by the hair, and began punching plaintiff in the face. Tafari asserts that Manno also punched the plaintiff in the left side of his face and that Drews and Manno "took the plaintiff down to the floor." (Docket No. 1 at ¶¶ 16-17). The plaintiff further alleges that defendant Paul began to kick the plaintiff in the mid-section and that Paul "took out a pocket-knife, and cut one of the plaintiff's locks from his head." (Docket No. 1 at ¶ 18). Tafari states that Paul "smacked" him in the face with the dread-lock that she had just cutoff his head and stated: "you don't write me up or none of my officers, you got P.L.S. and the F.B.I. coming in the building doing investigations, this is why we are whipping your ass." (Docket No. 1 at ¶ 18). The plaintiff claims that he received a laceration above his left eye, bruised shoulders, a bruise in his upper back and mid left side, and a broken tooth as a result of the alleged assault. (Docket No. 1 at ¶ 20).

The defendants assert that while returning from the hospital on September 16, 2009, Tafari became agitated and stated to the defendants: "you fucking punks, you aint' noting but fucking punks" (Docket No. 44, Exhibit B, Declaration of Mark Drews (hereafter "Drews Declaration") at ¶ 6). Drews states that Tafari then used his head to strike Drews in the left cheekbone area of his face. Further, Drews stated that Tafari attempted to bite him and began to spit at him. Drews asserts that he attempted to get control of Tafari by grabbing him by one of

his dread locks and pulling him away from Drews. (Drews Declaration at ¶ 6). Drews, along with Manno and Paul subdued Tafari. (Docket No. 44, Exhibit C, Declaration of Lynn Paul (hereafter "Paul Declaration") at ¶¶ 6-7; Exhibit D, Declaration of Paul Manno (hereafter "Manno Declaration") at ¶¶ 5-6). The defendants deny using excessive force.

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components-one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Wright v. Goord, 554 F.3d 255 (2d. Cir. 2009) citing Hudson v. McMillian, 503 U.S. 1, 7-8 (1992) and Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir.1999). In Wright, the Second Circuit explained the subjective and objective standards:

> The subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' " in light of the particular circumstances surrounding the challenged conduct. ... When prison officials are accused of using excessive force, the "wantonness" issue turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." ...
> The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of "contemporary standards of decency." ... In assessing this component, the court must ask whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." ... But when prison officials use force to cause harm maliciously and sadistically, "contemporary standards of decency always are violated.... This is true whether or not significant injury is evident." ... Accordingly, where a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak. ...

Wright, 554 F.3d. at 268-269.

Notwithstanding, the Second Circuit made it clear that the Eighth Amendment's prohibition against cruel and unusual punishment does not extend to '*de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.' " Id. citing Hudson v. McMillian, 503 U.S. 1, 10 (1992)(internal quotation marks omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Wright, 554 F.3d. at 269 citing Hudson, 503 U.S. at 9 and Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973).

In the instant case, significant issues of fact exist between the plaintiff's and the defendants' allegations regarding the September 16, 2003 incident. If the plaintiff's version of the facts were to be proven true, a trier of fact could conclude that the defendants did not act in a good-faith effort to maintain or restore discipline, but instead acted maliciously and sadistically to injure the plaintiff. Similar questions of fact exist as to whether the injuries the plaintiff allegedly suffered as a result of the altercation meet the objective standard under Hudson and its progeny. Inasmuch as the Court cannot conclude that the use of force in this case was *de minimus* as a matter of law, these questions of fact preclude the entry of summary judgment as to the plaintiff's claims based upon excessive force on September 16, 2003. The Court notes that the instant motion does not address the plaintiff's claims of excessive force on July 23, 2003 (Docket No. 1 at ¶ 14).[5]

---

[5] At his deposition, Tafari stated that he believed the incident in which his thumbs were twisted and his arms pulled occurred on July 22, 2003, not July 23, 2003. (Docket No. 44, Tafari Deposition at pages 25-27).

**Retaliation**

The plaintiff also asserts a vague retaliation claim by use of the heading "Retaliatory" just prior to paragraph 12 of the complaint. At his deposition, the plaintiff testified that this claim was asserted against Drews. (Docket No. 44, Tafari Deposition at page 36). Tafari stated that he did not think Manno was retaliating against him, but that Manno just took part in the September 16, 2009 incident to assist Drews. (Docket No. 44, Tafari Deposition at page 38). In his Statement of Disputed Facts (Docket No. 47), Tafari alleges that he filed a complaint against Paul on July 22, 2003; and that on July 23, 2003, Paul "recruited" Drews to sexually assault him. (Docket No. 47 at ¶ 2). This is inconsistent with Tafari's deposition testimony in which he testified that prior to the September 16, 2003 incident, defendant Paul had never threatened to take action against the plaintiff. (Docket No. 44, Tafari Deposition at page 38).[6]

---

[6] The plaintiff does not set forth a conspiracy claim in the complaint. To the extent the newly stated allegations in his Statement of Disputed Facts attempt to assert a conspiracy claim, they are insufficient. In order to establish a §1983 conspiracy claim, a plaintiff must demonstrate: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on him; and (2) "an overt act [was] done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir.1999); see also Walker v. Jastremski, 430 F.3d 560, 564 n. 5 (2d Cir.2005) ("conclusory or general allegations are insufficient to state a claim for conspiracy under § 1983"); Headley v. Fisher, 2008 WL 1990771 (S.D.N.Y. 2008). "[C]omplaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir.1977); Allah v. Poole, 506 F.Supp. 2d. 174 (W.D.N.Y. 2007)(conclusory allegations insufficient to maintain of conspiracy of defendants to retaliate against plaintiff); Young v. Shipman, 2007 WL 1064316, at *1 (D.Conn. 2007) ("The conspiracy claim is dismissed because plaintiff's vague, unsupported allegations of conspiracy are insufficient to withstand a motion for summary judgment"). It is well-settled that "[a] plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy, [however] the pleadings must present facts tending to show agreement and concerted action." Concepcion v. City of New York, 2008 WL 2020363 at *3 (S.D.N.Y. 2008) citing McIntyre v. Longwood Central School Dist., 2008 WL 850263, at *11 (E.D.N.Y. 2008). In the instant case, other than his own conclusory allegations, the plaintiff has presented no evidence on concerted activity by these defendants. Further, these

It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights. Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). To survive summary judgment, "a plaintiff asserting First Amendment retaliation claims must demonstrate the existence of a question of fact that (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Dawes v. Walker, 239 F.3d 489, 492 (2d Cir.2001); Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir.2002); Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir.2000); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996). Furthermore, a prisoner's retaliation claim must also be examined with "skepticism and particular care." Colon, 58 F.3d at 872. The Second Circuit has cautioned that retaliation claims by prisoners are "prone to abuse" as "[v]irtually every prisoner can assert such a claim as to every decision which he or she dislikes." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir.1983); Dawes, 239 F.3d 489, 491. Thus, a prisoner's claim of retaliation must be supported by specific and detailed factual allegations. (Colon, 58 F.3d at 872; Flaherty, 713 F.2d at 13) and must demonstrate that challenged conduct was a substantial or motivating factor in adverse actions taken by the prison officials. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir.2003). The alleged retaliation must be more than *de minimis*; that is, it must be sufficient to deter a similarly situated person of ordinary firmness from exercising his or her rights. Davis v. Goord, 320 F.3d 346, 353 (2d Cir.2003). Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Dawes, 239 F.3d at 492-493 citing: Suppan v. Dadonna, 203 F.3d 228, 235

---

new self-serving allegations are contradicted by the plaintiff's own deposition testimony.

(3d Cir.2000); see also Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir.1999); Crawford-El v. Britton, 93 F.3d 813, 826 (D.C.Cir.1996) (en banc), rev'd on other grounds, 523 U.S. 574 (1998); Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection. Dawes, 239 F.3d. 493, citing Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir.1999) (per curiam). This objective inquiry is "not static across contexts," but rather must be "tailored to the different circumstances in which retaliation claims arise." Dawes, 239 F.3d. at 493 citing Thaddeus-X, 175 F.3d at 398. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [ retaliatory] action taken against them is considered adverse." Id.

Allegations of adverse actions alone, however, are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct. See Dawes, 239 F.3d at 492; Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir.2000). The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action. In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. See Colon, 58 F.3d at 872-73.

In the instant case, at his deposition the plaintiff contended that the alleged assault on September 16, 2003 was in retaliation for the complaints he filed against Drews in the summer of

12

2003. (Docket No. 44, Tafari Deposition at page 36).   Tafari testified that on September 14, 2003, "federal marshals" came to interview him regarding his complaints against Drews. (Docket No. 44, Tafari Deposition at page 29-31).  If, in fact, law enforcement agents came to Wende on September 14, 2003 to investigate Tafari's complaints against Drews, the plaintiff has sufficiently articulated the basis for a retaliation claim: that he engaged in protected speech (his complaint against Drews); that a specific adverse action taken against him (the alleged assault by the defendants); and a causal connection between the protected speech and the alleged assault (the alleged assault took place two days after federal marshals purportedly came to Wende to investigate Tafari's claims against Drews).  If the plaintiff's assertions were proven true, a trier of fact may conclude that the incident of September 16, 2003 was sufficient to sustain a claim of retaliation.  Thus, the defendants' motion for summary judgment as to the retaliation claim must be denied based upon the record before the Court.

**Qualified Immunity**

The defendants also contend that they are entitled to qualified immunity.  Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982); Mitchell v. Forsyth, 472 U.S. 511, 524 (1985); Coons v. Casabella, 284 F.3d 437, 440-41 (2d Cir.2002); Cerrone v. Brown, 246 F.3d 194, 199 (2d Cir.2001) ( " Cerrone "). Where the right at issue – here, the right not to be subjected to excessive force – was clearly established but was violated, the defendants will nonetheless be entitled to qualified immunity "if ... it was

13

objectively reasonable for them to believe their acts did not violate those rights." Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994), cert. denied, 513 U.S. 1076 (1995); Anderson v. Creighton, 483 U.S. 635, 639-40 (1987).

The qualified immunity test is an objective one. "[I]f officers of reasonable competence could disagree" as to whether probable cause existed, "immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). But "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" probable cause existed, "[d]efendants will not be immune ...." Id. Whether a defendant's conduct was objectively reasonable is a mixed question of law and fact. Zellner v. Summerlin, 494 F.3d 344, 367 (2d. Cir. 2007); Kerman v. City of New York, 374 F.3d 93, 109 (2d Cir.2004); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir.1995); Oliveira, 23 F.3d at 649-50; Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir.), cert. denied, 498 U.S. 967 (1990). The ultimate question of whether it was objectively reasonable for the defendant to believe that his conduct did not violate a clearly established right, i.e., whether correction officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court. However, "[a] contention that-notwithstanding a clear delineation of the rights and duties of the respective parties at the time of the acts complained of-it was objectively reasonable for the official to believe that his acts did not violate those rights 'has its principal focus on the particular facts of the case.' " Kerman, 374 F.3d at 109 quoting Hurlman v. Rice, 927 F.2d 74, 78-79 (2d Cir.1991).

If there is no dispute as to the material historical facts, the matter of whether the officer's conduct was objectively reasonable is an issue of law to be determined by the court. Zellner, 494 F.3d at 368; Lennon, 66 F.3d at 421; Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987). "[I]f there

14

is such a dispute," however, "the factual questions must be resolved by the factfinder." Zellner, 494 F.3d at 368 quoting Kerman, 374 F.3d at 109. Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court. Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir.2003) (after the district court receives the jury's decision as to what the facts were that the officer faced or perceived, the court then may make the ultimate legal determination of whether qualified immunity attaches on those facts); Lennon, 66 F.3d at 421 (the ultimate question of entitlement to qualified immunity is one of law for the court to decide "[o]nce disputed factual issues are resolved"); Warren, 906 F.2d at 76 ("If there are unresolved factual issues which prevent an early disposition of the defense, the jury should decide these issues .... The ultimate legal determination whether ... a reasonable police officer should have known he acted unlawfully" should be made by the court "on the facts found" by the jury.)[7]

In the instant case, questions of fact preclude the grant of qualified immunity. Although the defendants assert that the "facts establish that the defendants used at most necessary and reasonable force and only the amount of force that was necessary to control inmate Tafari," the plaintiff has disputed this contention. Thus, in this case, the Court can make a determination as

---

[7] "[B]ecause qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings so that the trial court can determine ... which facts material to the qualified immunity defense must be presented to the jury to determine its applicability once the case has gone to trial. ... . To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question. See, e.g., id. If the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding." Zellner, 494 F.3d. at 368 (citations omitted). See also Kerman, 374 F.3d at 120; Warren, 906 F.2d at 76 ("the jury should decide these issues on special interrogatories").

to whether the defendants are entitled to qualified immunity after the trier of fact resolves the factual issues relating to the circumstances surrounding the September 16, 2003 altercation between the plaintiff and the defendants. With respect to this issue, the motion for summary judgment is denied without prejudice.

**Trial**

The trial in this matter shall proceed on October 29, 2009 with jury selection at 9:00 a.m. and the trial to follow immediately. The trial shall concern the plaintiff's claims of excessive force on July 23, 2003 and September 16, 2003, as well as his claim of retaliation. Pretrial statements including a list of witnesses, a list of exhibits and proposed jury instructions shall be filed by October 21, 2009.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
October 8, 2009